IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VOLLMAN V. VOLLMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KAREN S. VOLLMAN, APPELLEE,

V.

EMIL H. VOLLMAN, APPELLANT.

Filed August 11, 2026.    No. A-25-625.

Appeal from the District Court for Otoe County: JULIE D. SMITH, Judge. Affirmed.

Emil H. Vollman, pro se.

Sheri A. Burkholder and Courtney B. Shanahan, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., for appellee.

BISHOP, WELCH, and FREEMAN, Judges.

BISHOP, Judge.

## INTRODUCTION

Emil H. Vollman, pro se, appeals from the decree of the Otoe County District Court that dissolved his marriage to Karen S. Vollman, divided marital assets and debts, and found him in willful contempt for failing to abide by pretrial orders. Because Emil has failed to properly assign error pursuant to Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2025), we have reviewed the record only for plain error. Finding none, we affirm.

## BACKGROUND

Emil and Karen were married in January 1974. While not included in our record on appeal, the district court's decree indicates that Karen filed a complaint for dissolution of marriage on June 11, 2024. During the proceedings below, Karen was represented by counsel and Emil proceeded pro se. Although children were born during the marriage, none were affected by these proceedings.

- 1 -

PRETRIAL ORDERS

On August 9, 2024, the district court entered a temporary order addressing, among other things, spousal support. Under the terms of the order, Emil was to pay Karen $3,000 per month in temporary support. The court entered an additional order on September 30 directing the parties to attend mediation within 60 days. The September order contained a warning that "[f]ailure to attend the mediation may result in sanctions and/or a contempt proceeding."

ATTEMPTED GARNISHMENTS

On November 18, 2024, Karen filed several affidavits and praecipes seeking garnishment summonses. Each affidavit averred that Karen had "recovered a judgment" against Emil on August 9 in the amount of $12,081.86. The praecipes requested the issuance of garnishment summonses to six Nebraska banks "believe[d]" to hold property of and/or be indebted to Emil.

On December 3, 2024, the district court entered an order finding that "each Order of Garnishment in Aid of Execution in [the] case" was void. The orders referenced by the court are not included in our record on appeal. The court explained that its August 9 order for temporary spousal support was "not a final order, as it did not adjudicate all pending claims." However, the court "admonished" Emil to pay spousal support, pursuant to the terms of the temporary order. It warned that "[f]ailure to do so may result in [Emil] being held in contempt of court." The court noted that Emil owed Karen $15,000 in unpaid support and $115.57 in interest as of the entry of its December 3 order.

ORDER TO SHOW CAUSE

On January 29, 2025, Karen filed a motion requesting the district court to enter an order directing Emil to show cause why he should not be held in contempt. The motion alleged, among other things, that Emil had "failed and refused" to (1) pay spousal support pursuant to the terms of the court's temporary order and (2) attend court-ordered mediation. The record on appeal does not contain an order from the court directing Emil to show cause. However, on the day of trial, the court stated on the record that it had entered an order to show cause on January 30. Emil entered a denial to all allegations in Karen's motion.

TRIAL

A consolidated trial on Karen's complaint for dissolution of marriage and the district court's order to show cause was conducted on July 3, 2025. Prior to trial, the parties had negotiated a partial settlement that divided most marital assets, resulting in each party receiving a net marital estate valued at approximately $1.8 million. However, the parties were unable to agree on a small number of issues, including the disposition of the marital home located on Steamwagon Road (the Steamwagon property) in Nebraska City, Nebraska. Emil's arguments on appeal largely center upon the court's disposition of the Steamwagon property. We set forth the evidence relevant to that property below.

On the day of trial, the district court engaged in a lengthy colloquy with the parties to ascertain their respective positions on the disposition of the Steamwagon property. Emil indicated that he was agreeable to Karen being awarded the Steamwagon property on the condition that he was given a right of first refusal. He otherwise did not "want [Karen] to have the house." Karen

rejected the offer. Emil also expressed concerns related to the mortgage on the Steamwagon property. Evidence adduced at trial showed that the Steamwagon property was subject to a $229,365.97 mortgage, with a 3.74 percent interest rate. This mortgage was the parties' only marital debt. Although Karen agreed to assume responsibility for the mortgage if awarded the Steamwagon property, Emil indicated that his "name is on [the] debt." He was worried that Karen would fail to make timely payments. As such, the issues to be tried regarding the Steamwagon property were (1) the disposition of the home, (2) whether Emil should have a right of first refusal in the event Karen was awarded the residence, and (3) the allocation of responsibility for the mortgage on the property. The parties stipulated that the value of the Steamwagon residence was $420,000.

Emil testified that he discovered the Steamwagon property and purchased the residence "to help [Karen] out" due to her back issues and struggles with using stairs. Karen indicated that she suffers from back problems, which require weekly chiropractic care. She also has osteoporosis. As of the time of trial, Karen had lived at the Steamwagon property for 3 years. She testified that it would be a burden for her to move out of the home. After dissolution proceedings began, Emil moved to another property owned by the parties, located on Scenic Drive in Nebraska City. Pursuant to the parties' partial settlement, Emil was awarded the Scenic Drive property.

Karen called James Vollman, the parties' adult son, to testify about concerns he had with a potential right of first refusal. James testified that Emil has "always been in attack mode" and that awarding Emil a right of first refusal on the Steamwagon property would give him "one more thing that he can hold over [Karen's] head." James believed that "there cannot be any more ties between [Emil and Karen]."

Regarding the district court's order to show cause, Karen offered, without objection, certified copies of the August 9, 2024, order requiring Emil to pay $3,000 per month in temporary spousal support and a "Payment History Account Detail Report" showing Emil had $10,463.06 in unpaid support and interest. Emil testified that he was aware of the court's order for temporary spousal support and readily admitted he had not made consistent payments. Emil stated he did not pay the temporary support because he "didn't have the money."

Karen also offered, without objection, a certified copy of the court's September 30, 2024, order requiring the parties to attend mediation. A mediation session was scheduled for November 26. Emil testified that he did not attend mediation on that date, despite being aware of the court's order.

DISTRICT COURT'S DECREE

The district court entered a dissolution decree on July 22, 2025. Relevant to this appeal, the court awarded the Steamwagon property to Karen "as her sole and separate property" and denied Emil's request for a right of first refusal. The court reasoned:

[T]he purpose of this dissolution is to permanently separate two individuals, including the division of assets and debts. Allowing one party to continue to have an interest in property awarded to the other is an open invitation for future disagreements, discord and litigation. The Court understands that [Emil] found the house, and he likes it, but this does not override the interest in a permanent and clean division of all real estate. The Court finds that a "clean break" is in both parties' best interests and that the division is equitable.

- 3 -

The decree specifically noted that Karen was "not required to refinance" the mortgage associated with the Steamwagon property, but it indicated that Emil could see if the bank would "change the mortgage into [Karen's] name. . . . under its existing terms and interest rate." The court ordered Karen to hold Emil "free and harmless from any and all liability for any loans, encumbrances, taxes and insurance due on" the residence.

The district court found Emil to be "in willful contempt" for failing to pay Karen temporary spousal support in the amount of $3,000 per month and failing to attend mediation as ordered. Emil was directed to serve 20 days in jail, beginning on August 18, 2025, but was afforded the opportunity to "purge" himself of contempt and avoid jail time by paying all outstanding temporary spousal support and interest in full by August 15.

Emil appeals.

ASSIGNMENT OF ERROR

Section 2-109(D)(1)(e) of our rules of appellate practice require an appellant's initial brief to include a section containing a "separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The rule further limits appellate review to "errors assigned and discussed in the brief," but "[t]he court may, at its option, notice a plain error not assigned." *Id.*

Emil's sole assignment of error is that the "[i]ssues decided by the District Court constitute [an] abuse of discretion." Although the assignment refers to "[i]ssues decided" by the trial court, Emil does not identify the specific rulings or findings of the court that he challenges on appeal. A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Quiles v. Collazo*, 33 Neb. App. 180, 12 N.W.3d 518 (2024). Emil's assertion that the "[i]ssues decided" by the trial court were an abuse of discretion, without further elaboration or context, is the type of generalized assignment of error that we do not consider.

We note, however, that in the one-page argument section of his brief, Emil does provide some specificity as to the issues he requests that we consider on appeal. Based on our reading of Emil's argument, he seems to contend that the trial court abused its discretion by (1) denying his motion requesting "a hearing on excessive withdrawals by" Karen and (2) refusing to remove his name from the mortgage on the Steamwagon property. Brief for appellant at 7. Emil also takes issue with (3) Karen's attempted garnishments, describing them as "[b]ogus and illegal." *Id.*

Although the argument section of Emil's brief does identify those "[i]ssues" he challenges on appeal, the Nebraska Supreme Court has consistently stated that alleged errors of the trial court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by an appellate court. See *Ramaekers v. Creighton University*, 320 Neb. 478, 28 N.W.3d 57 (2025). Here, Emil did not specifically assign error, as required by § 2-109(D)(1)(e). We are cognizant that Emil is acting pro se and, as such, may not be familiar with our rules of appellate practice. However, that does not excuse his failure to comply with the requirements of § 2-109(D)(1)(e). See *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023) (self-represented litigant will receive same consideration as if he or she had been

- 4 -

represented by attorney, and litigant is held to same standards as one who is represented by counsel).

Emil's failure to properly designate assignments of error impacts this court's standard of review, as set forth next.

## STANDARD OF REVIEW

Where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), an appellate court may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *Swicord v. Police Stds. Adv. Council*, 309 Neb. 43, 958 N.W.2d 388 (2021). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

The decision to conduct a plain error review is at the discretion of the appellate court. See *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). We elect to review the record for plain error.

## ANALYSIS

### DENIAL OF EMIL'S MOTION

In the argument section of his brief, Emil first contends that the district court erred by denying his motion that requested "a hearing on excessive withdrawals by [Karen]." Brief for appellant at 7. He does little to expand on this point, simply stating that the court's decision "was the beginning of the end." *Id.*

Our record on appeal does not include Emil's motion, nor does it contain the trial court's ultimate disposition of the motion. Because Emil's motion was not made part of the appellate record, we presume that the trial court did not plainly err in denying the motion. See *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025) (it is incumbent upon party appealing to present record that supports errors assigned; absent such a record, the decision of lower court as to those errors will be affirmed).

### STEAMWAGON MORTGAGE

Emil next argues that the district court erred when it failed to "remove [his] name from the mortgage" on the Steamwagon property. Brief for appellant at 7. He takes issue with the fact that he "is still legally liable for debt in property he has no interest in." *Id.*

The only marital debt in this case was the $229,365.97 mortgage against the Steamwagon property. According to a November 2024 loan statement received by the district court, the "Regular Monthly Payment" on the mortgage was $1,105.24, and the debt has a maturity date of June 1, 2051. Prior to trial, Emil informed the court that his "name is on [the] debt" and voiced his concern that Karen may fail to make mortgage payments. The court acknowledged that Emil would still be personally liable for the mortgage in the event the residence was awarded to Karen. However, the court explained that the mortgagee was "not a party to the case," so it could not "force" the mortgagee to release Emil from the debt obligation.

In its dissolution decree, the district court awarded the Steamwagon property to Karen "free and clear" of any interest Emil had in the real estate. However, the decree also requires Karen to

assume responsibility for the mortgage and "hold [Emil] free and harmless from any and all liability for any loans, encumbrances, taxes and insurance on" the Steamwagon property. Thus, under the terms of the decree, Karen must indemnify Emil against any personal liability arising from the mortgage. The decree specifically stated that Karen was not required to refinance the mortgage but noted that Emil could see if the bank would remove him from the mortgage while leaving the "mortgage under its existing terms and interest rate."

In *Verzal v. Verzal*, 29 Neb. App. 904, 910, 962 N.W.2d 563, 568 (2021), this court confronted a situation in which a wife was awarded a marital residence subject to a mortgage and ordered to hold the husband "'free and harmless therefrom.'" However, the dissolution decree did not require the wife to refinance to remove the husband from the mortgage. On appeal, the husband argued that the mortgage continued to remain an obligation on his credit report and that it would "completely hamstring[]" his ability to move forward financially. *Id*. at 910, 962 N.W.2d at 568. We found that the trial court abused its discretion by not ordering the wife to refinance in her name only because the husband's credit "could be tied to the marital residence and the debt thereon for years into the future." *Id.* at 911, 962 N.W.2d at 568. We modified the decree in *Verzal* to require the wife to refinance the mortgage associated with the marital residence and remove the husband's name from any debt obligation thereon.

We first observe that, unlike the case before us, the husband in *Verzal* assigned as error the trial court's failure to require the wife to refinance the marital home. As discussed previously in our opinion, Emil has failed to assign error in compliance with § 2-109(D)(1)(e). We therefore consider whether the district court's decision not to require Karen to refinance the mortgage associated with the Steamwagon property constitutes plain error.

Notably, the financial and family circumstances in *Verzal* were quite different than they are here. Unlike *Verzal*, the parties in the present case divided a marital estate with a net value of more than $3 million, and no minor children were at issue. Emil and Karen were each awarded other investment real estate properties, none encumbered by mortgages, with total values well over the balance remaining on the Steamwagon property. Given the low interest rate on the existing loan, the substantial assets allocated to each party, and the court's order directing Karen to hold Emil free and harmless from any personal liability that may arise in connection with the mortgage, we cannot find plain error in the district court's decision regarding the Steamwagon mortgage.

GARNISHMENTS

Lastly, Emil argues that "[b]ogus and illegal garnishment[s] created massive problems for [him]." Brief for appellant at 7. He claims that Karen "sent notices to every bank in Nebraska City and some in Omaha, [Nebraska,] implying [he] was a deadbeat." *Id.* According to Emil, his bank accounts were garnished, causing his "utilities to have shut off notices." *Id.*

The record reflects multiple affidavits filed by Karen in an effort to garnish Emil's bank accounts for his failure to pay temporary spousal support. While not included in our record on appeal, apparently some garnishment orders were issued. However, in a December 3, 2024, order, the district court determined that the temporary spousal support order was not a final order and therefore found that "each Order of Garnishment in Aid of Execution in this case is **VOID**." (Emphasis in original.) Thus, we find no plain error related to the garnishments given the court's order voiding each garnishment order.

- 6 -

CONTEMPT

We note that Emil's brief contains a separate section requesting us to vacate the district court's finding that he was in willful contempt for failing to attend mediation. He asks that the finding be "stricken from official court records." Brief for appellant at 8.

Emil did not assign the district court's finding of willful contempt as error, nor does he attempt to put forward any argument to support his request. He has therefore failed to properly present the issue for appellate review. See *Ramaekers v. Creighton University*, 320 Neb. 478, 28 N.W.3d 57 (2025) (alleged errors of trial court must be specifically assigned and specifically argued in brief of party asserting errors to be considered by appellate court). Further, after reviewing the record, we find no plain error in the trial court's finding of willful contempt.

CONCLUSION

Having reviewed the record for plain error and finding none, we affirm the district court's July 22, 2025, dissolution decree.

AFFIRMED.